| | |
|---|---|
| Julianne P. Blanch, USB # 6495<br>Gregory H. Gunn, USB # 15610<br>**PARSONS BEHLE & LATIMER**<br>201 S. Main Street, Suite 1800<br>Salt Lake City, Utah 84111<br>Telephone: 801.532.1234<br>Facsimile: 801.536.6111<br>JBlanch@parsonsbehle.com<br>GGunn@parsonsbehle.com<br>ecf@parsonsbehle.com | OF COUNSEL:<br>Michael V. Solomita (*pro hac vice* to be requested)<br>**NORTON ROSE FULBRIGHT US LLP**<br>1301 Avenue of the Americas<br>New York, NY 10019-6022<br>Telephone: 212.318.3000<br>michael.solomita@nortonrosefulbright.com |

*Attorneys for Plaintiff RMG Media, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RMG MEDIA, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>DONOVAN MARINE, INC. and BOATING INVESTMENT GROUP, LLC,<br><br>Defendants. | **COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>Case No. 2:23-cv-00251-CMR<br><br>Magistrate Judge Cecilia M. Romero |

Plaintiff, RMG Media, LLC, for its complaint of copyright infringement against Defendants Donovan Marine, Inc. and Boating Investment Group, LLC (jointly, "Defendants") alleges as follows:

### THE PARTIES

1. Plaintiff RMG Media, LLC ("RMG" or "Plaintiff") is a company organized and existing under the laws of the State of New Jersey. RMG's principal place of business is New York, New York.

2.	On information and belief, Defendant Donovan Marine, Inc. ("Donovan Marine") is a corporation organized and existing under the laws of the State of Louisiana with its principal place of business in Harahan, Louisiana.

3.	On information and belief, Defendant Boating Investment Group, LLC ("BIG") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Taylorsville, Utah.

## NATURE OF ACTION

4.	This is a civil action against Defendants for copyright infringement under 17 U.S.C. §§ 101 et seq. This action arises out of Defendants' unauthorized reproduction, modification, distribution, public display, and/or use of copyrighted software owned and registered by RMG. Accordingly, RMG seeks monetary and equitable relief.

## JURISDICTION AND VENUE

5.	This Court has subject matter jurisdiction pursuant to 17 U.S.C. § 501 and 28 U.S.C. §§ 1331 and 1338(a).

6.	Personal jurisdiction over Defendants is proper because Defendants conduct business and have committed a tort in this District, including, without limitation, Defendants' copyright infringement, which causes harm in this state and in this District.

7.	The copyright infringement underlying this lawsuit was committed through the online website https://www.iboats.com (the "Website"), which is designed to be accessible and viewable anywhere and everywhere throughout the country (at a minimum), including to online viewers in this State.

4854-2650-5054.v1

8. Personal jurisdiction over Defendants is proper because Defendants have established minimum contacts within the State of Utah.

9. On information and belief, BIG, through the Website, has sold and continues to sell, *inter alia*, boat parts and accessories to individuals within the State of Utah.

10. On information and belief, BIG develops and operates the Website from its office in Taylorsville, Utah.

11. On information and belief, Donovan Marine directs, assists with, or consults on the management of BIG's operations in Taylorsville, Utah, including the development and operation of the Website. For example, on information and belief, Curtis Sanders, the manager of the Website for BIG, regularly meets with employees and officers of Donovan Marine regarding the operation and development of the Website and reports to John Benton Smallpage, president of Donovan Marine.

12. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events causing RMG's claims occurred in this District. Venue is also proper in this Court under 28 U.S.C. § 1400(a) because the case involves violations of the Copyright Act.

## BACKGROUND

### A. RMG's Ownership of the Copyrighted Works

13. On or about April 16, 2018, RMG and iBoats, Inc. ("iBoats") entered into a Master Services Agreement (the "MSA") whereby iBoats engaged RMG to perform certain services in connection with the Website. Under the MSA, the assignment and/or license of rights to RMG's work product is conditioned upon full compensation to RMG.

4854-2650-5054.v1

14. iBoats was a company incorporated in the State of Nevada with its principal place of business in Taylorsville, Utah but is now dissolved.

15. On or about June 1, 2018, RMG and iBoats entered into several project assignment agreements (the "Project Assignments") for certain computer software development services, DevOps services, and UI/UX services that RMG was to perform under the MSA (the "Services").

16. Pursuant to the Project Assignments, RMG wrote several new computer program modules and modified several pre-existing program modules for incorporation into the Website, including the modules listed in Exhibit A (the "Modules").

17. The Modules were written in source code form by employees of RMG or by contractors of RMG who assigned all of their rights in and to the Modules to RMG.

18. The Modules were then incorporated into the source code for the Website.

19. On January 30, 2020, RMG registered copyrights in the source code of the Modules with the United States Copyright Office and received registration numbers TXu 2-178-556; TXu 2-178-557; TXu 2-178-558; TXu 2-178-559; TXu 2-178-560; and TXu 2-178-598 (collectively, the "Registered Works," Exhibit A).

**B.     iBoats Fails to Pay RMG**

20. Under the terms of the MSA, the assignment of the Modules to iBoats, and iBoats' right to use any portion of the Modules, is conditioned upon the full payment of compensation to RMG in accordance with the Project Assignments.

21. On or about July 1, 2019, iBoats was in default of its payment obligations under the Project Assignments relating to the MSA.

22. On information and belief, iBoats operated the Website at least until December 31, 2019.

23. On information and belief, at least until December 31, 2019, the Website source code incorporated exact copies or derivatives of the Modules.

C. **Hopton Brow Acquires and Uses RMG's Registered Works Without Authorization**

24. On or about December 31, 2019, without RMG's knowledge, iBoats transferred ownership of the Website to Hopton Brow Utah LLC ("Hopton Brow") pursuant to an asset purchase (the "Transaction"). On information and belief, the Transaction transferred all of iBoats' assets to Hopton Brow.

25. Hopton Brow was a company incorporated in the State of Utah with its principal place of business in Taylorsville, Utah. Hopton Brow recently filed for dissolution on December 19, 2022.

26. On February 5, 2020, RMG provided notice to iBoats of the termination of the MSA for defaulting on its payment obligations. As a result of this termination, iBoats did not have a license to use RMG's Registered Works, nor did it have RMG's permission or consent to authorize others, including Hopton Brow, to use RMG's Registered Works beyond February 5, 2020. However, the Website (as operated by Hopton Brow as of February 5, 2020) incorporated exact copies or derivatives of the Modules without authorization from RMG.

27. On February 27, 2020, RMG filed a suit for copyright infringement against iBoats and its investor Seacoast Capital Managers, LLC in the District of Delaware, Case. No. 1:20-CV-00290. RMG was unaware of the Transaction or the identity of Hopton Brow at the time.

28. On July 7, 2020, an unidentified Hopton Brow was added to the suit as a John Doe defendant.

29. On September 9, 2021, Hopton Brow was named as a defendant in that suit.

30. On January 3, 2022, the suit was transferred to the District of Utah, Central Division as Case. No. 2:22-CV-00003. The case is currently stayed pending the bankruptcy of Hopton Brow.

31. As of June 2020, the Website, as operated by Hopton Brow under the direction of Defendants, continued to incorporate exact copies or derivatives of the Modules without authorization from RMG.

32. Attached as Exhibit B are examples of code found on the Website that are exact copies or derivatives of the Registered Works.

**D.    Hopton Brow Obtains a Secured Line of Credit from BIG**

33. On information and belief, on or around April 2022, Hopton Brow entered negotiations with employees, officers, or agents of Donovan Marine to secure a line of credit for $1 million.

34. On information and belief, Donovan Marine facilitated the formation of BIG for the purpose of providing a secured line of credit to Hopton Brow.

35. On April 20, 2022, BIG filed its certificate of formation with the State of Delaware.

36. On information and belief, Donovan Marine controls, operates, and finances BIG.

37. On April 20, 2022, Hopton Brow and BIG executed a promissory note and a security agreement that granted Hopton Brow a secured line of credit from BIG for $1 million with

an immediate draw of $300,000. The promissory note did not specify a payment schedule and the schedule of loans and payments of principal attached to the promissory note was left blank.

38. On April 21, 2022, Humphreys Investors, LLC ("Humphreys Investors") recorded an approximately $3 million lien senior to BIG's secured interest.

39. On information and belief, Donovan Marine controls, operates, and finances Humphreys Investors, which has the same address as Donovan Marine's principal place of business in Harahan, Louisiana.

40. On July 26, 2022, Hopton Brow and BIG executed an amended promissory note to increase the secured line of credit to $2 million.

41. On information and belief, Hopton Brow had not made any payments on the note at the time of the amended promissory note.

E.   **Donovan Marine Controls the Day-to-Day Management of Hopton Brow**

42. On information and belief, the promissory note associated with the secured line of credit required Hopton Brow to engage a consultant selected by BIG to advise Hopton Brow on day-to-day management decisions, including cash flow issues, litigation settlement decisions, and development and operation of the Website.

43. On information and belief, pursuant to the promissory note, employees and officers of Donovan Marine were engaged as such a consultant.

44. On information and belief, Donovan Marine supervised and had control over the day-to-day management decisions of Hopton Brow. For example, during Hopton Brow's settlement negotiations with RMG around August of 2022, RMG was informed that Hopton Brow's creditor, Donovan Marine, was making the decisions regarding settlement. Additionally,

7

on information and belief, Curtis Sanders, the manager of Hopton Brow at the time, did not believe he had the authority to refuse any directives from Donovan Marine, including a directive requiring Mr. Sanders to sign an amendment to the security agreement with BIG in September 2022 that required Hopton Brow to waive certain rights under Louisiana law on the event of a default to the sole benefit of BIG.

45. On information and belief, as of November 2022, the Website, as operated by Hopton Brow under the direction of Defendants, continued to incorporate exact copies or derivatives of the Modules without authorization from RMG.

46. On information and belief, Defendants induced, caused, facilitated, encouraged, or materially contributed to Hopton Brow's direct infringement of the Registered Works through their involvement in the day-to-day management of Hopton Brow, including the development and operation of the Website.

47. On information and belief, by virtue of the negotiations for the secured line of credit and the involvement in the day-to-day management decisions of Hopton Brow, both Defendants had actual knowledge of RMG's claims of copyright infringement against Hopton Brow and Hopton Brow's continued unauthorized use of the Registered Works.

48. Defendants knew, or should have known, that Hopton Brow's continued use of the Modules or derivatives of the Modules in the Website would constitute infringement of RMG's copyright in the Registered Works.

49. On information and belief, BIG, as a secured lender of Hopton Brow, had a direct financial benefit in Hopton Brow's continued operation of the Website, which drove Hopton Brow's continued infringing use and possession of the Modules.

4854-2650-5054.v1

F. **BIG Forecloses on Hopton Brow**

50. On information and belief, on September 26, 2022, BIG sent a letter to Hopton Brow demanding full payment of $1,003,600 that was due under the secured line of credit.

51. On October 27, 2022, BIG served Hopton Brow with a petition for executory process filed in the Civil District Court for the Parish of Orleans, Louisiana (Case No. 2022-9306, Div. D-12), an amended petition, an order granting the amended petition, and a notice of seizure of Hopton Brow's intellectual property rights, including the Website and associated code.

52. On December 7, 2022, Hopton Brow's intellectual property rights were sold in a sheriff's auction to BIG for $470.13.

53. On information and belief, BIG, as a secured lender of Hopton Brow, had a direct financial benefit in acquiring an operational Website from Hopton Brow, which required Hopton Brow's continued infringing use and possession of the Modules.

54. On information and belief, on or around December 10, 2022, all of the employees of Hopton Brow were directed by one or both of the Defendants to resign from Hopton Brow.

55. On information and belief, all of the former employees of Hopton Brow were subsequently hired by BIG.

56. On information and belief, prior to the foreclosure, BIG had no business operations other than providing the line of credit to Hopton Brow.

G. **BIG and Donovan Marine Continue to Use the Registered Works Without Authorization**

57. By virtue of the sheriff's auction, as of December 7, 2022, BIG purportedly owns and operates the Website.

58. On information and belief, following the acquisition of the Website from Hopton Brow, the development and operation of the Website became BIG's only business operation.

59. On information and belief, as of December 2022, the Website, as operated by BIG under the direction of Donovan Marine, continues to incorporate exact copies or derivatives of the Modules without authorization from RMG.

60. On information and belief, Donovan Marine continues to control, operate, and finance BIG, including the development and operation of the Website.  For example, on information and belief, Curtis Sanders, as manager of the Website for BIG, reports directly to John Benton Smallpage, the president of Donovan Marine.  On information and belief, Mr. Sanders also regularly meets with employees and officers of Donovan Marine regarding the development and operation of the Website.

61. Donovan Marine had a direct financial benefit in BIG's continued operation of the Website, which required BIG's continued infringing use and possession of the Modules.

62. Both Donovan Marine and BIG knew, or should have known, that BIG's continued use of the Modules or derivatives of the Modules in the Website would constitute infringement of RMG's copyright in the Registered Works.

**FIRST CLAIM FOR RELIEF**
**DIRECT COPYRIGHT INFRINGEMENT BY BIG**

63. RMG incorporates by reference each and every allegation contained in Paragraphs 1–62 above.

64. Defendant BIG has directly infringed and is currently directly infringing the Registered Works by copying, using, modifying, distributing, and publicly displaying the Modules, or derivatives of the Modules, in the Website without authorization.

4854-2650-5054.v1

65. At the time of its infringement, BIG was not licensed or otherwise authorized to copy, use, modify, distribute, or publicly display the Modules.

66. The acts of BIG complained of herein constitute direct infringement of the Registered Works and exclusive rights under copyright in violation of 17 U.S.C. §§ 106 and 501.

67. The specific acts of direct copyright infringement alleged in this Complaint, as well as the entire course of conduct of BIG, have caused and are causing RMG significant damage.

68. By continuing its unauthorized copying, using, modifying, distributing, and publicly displaying of the Modules, or derivatives of the Modules, in the Website, BIG threatens to continue the direct copyright infringement on essentially a daily basis.

69. Unless this Court restrains BIG from committing further acts of direct copyright infringement, RMG will suffer irreparable injury from which it has no adequate remedy of law.

70. RMG further seeks an order under 17 U.S.C. § 503 directing the impoundment, destruction, or other reasonable disposition of all infringing materials.

71. The acts of direct copyright infringement by BIG have been willful, intentional, and purposeful in disregard of and indifference to RMG's rights.

72. Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of BIG's direct infringement of the Registered Works, RMG is entitled to recover up to $150,000 in statutory damages for each of the Registered Works infringed.

73. Alternatively, at RMG's election, pursuant to 17 U.S.C. § 504(b), RMG is entitled to its damages, including BIG's profits from direct infringement, in connection with the Registered Works as will be proven at trial.

74. RMG is also entitled to recover attorneys' fees and costs pursuant to 17 U.S.C. § 505 and prejudgment interest according to law.

## SECOND CLAIM FOR RELIEF
## CONTRIBUTORY COPYRIGHT INFRINGEMENT BY BIG

75. RMG incorporates by reference each and every allegation contained in Paragraphs 1–62 above.

76. BIG has induced, caused, facilitated, encouraged, or materially contributed to Hopton Brow's direct infringement of the Registered Works.

77. Through its day-to-day management of Hopton Brow, including its involvement in litigation settlement decisions, BIG had actual knowledge that the Website infringed the Registered Works.

78. BIG knew, or should have known, that Hopton Brow's continued use of the Modules or derivatives of the Modules in the Website would constitute infringement of RMG's copyright in the Registered Works.

79. These specific acts of contributory copyright infringement alleged in this Complaint, as well as BIG's entire course of conduct, have caused and are causing RMG significant damage.

80. The acts of contributory infringement by BIG have been willful, intentional, and purposeful in disregard of and indifference to RMG's rights.

81. Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of BIG's contributory infringement of the Registered Works, RMG is entitled to recover up to $150,000 in statutory damages for each of the infringed Registered Works.

12

82. Alternatively, at RMG's election, pursuant to 17 U.S.C. § 504(b), RMG is entitled to its damages, including BIG's profits from contributory infringement, in connection with the Registered Works as will be proven at trial.

83. RMG is also entitled to recover attorneys' fees and costs pursuant to 17 U.S.C. § 505 and prejudgment interest according to law.

### THIRD CLAIM FOR RELIEF
### VICARIOUS LIABILITY FOR COPYRIGHT INFRINGEMENT BY BIG

84. RMG incorporates by reference each and every allegation contained in Paragraphs 1–62 above.

85. BIG is vicariously liable for Hopton Brow's direct infringement of the Registered Works.

86. BIG had the legal right and the actual ability to supervise or control the infringing activities of Hopton Brow.

87. BIG failed to take any action to stop such infringement of the Registered Works.

88. BIG had a financial interest in, and derived direct financial benefit from, Hopton Brow's infringing use of the Registered Works.

89. By failing to stop the infringement of Hopton Brow, BIG profited from illicit revenue and, ultimately, obtained illicit valuable assets that it would not have otherwise received.

90. These specific acts of vicarious copyright infringement alleged in this Complaint, as well as BIG's entire course of conduct, have caused and are causing RMG significant damage.

91. The acts of vicarious copyright infringement by BIG have been willful, intentional, and purposeful in disregard of and indifference to RMG's rights.

92. Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of BIG's vicarious copyright infringement of the Registered Works, RMG is entitled to recover up to $150,000 in statutory damages for each of the infringed Registered Works.

93. Alternatively, at RMG's election, pursuant to 17 U.S.C. § 504(b), RMG is entitled to its damages, including BIG's profits from vicarious copyright infringement, in connection with the Registered Works as will be proven at trial.

94. RMG is also entitled to recover attorneys' fees and costs pursuant to 17 U.S.C. § 505 and prejudgment interest according to law.

## FOURTH CLAIM FOR RELIEF
## CONTRIBUTORY COPYRIGHT INFRINGEMENT BY DONOVAN MARINE

95. RMG incorporates by reference each and every allegation contained in Paragraphs 1–62 above.

96. Donovan Marine has induced, caused, facilitated, encouraged, or materially contributed to Hopton Brow's and BIG's direct infringement of the Registered Works.

97. Through its day-to-day management of Hopton Brow and BIG, including its involvement in litigation settlement decisions, Donovan Marine had actual knowledge that the Website infringed the Registered Works.

98. Donovan Marine knew, or should have known, that Hopton Brow's and BIG's continued use of the Modules or derivatives of the Modules in the Website would constitute infringement of RMG's copyright in the Registered Works.

99. These specific acts of contributory copyright infringement alleged in this Complaint, as well as Donovan Marine's entire course of conduct, have caused and are causing RMG significant damage.

100. The acts of contributory infringement by Donovan Marine have been willful, intentional, and purposeful in disregard of and indifference to RMG's rights.

101. Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of Donovan Marine's contributory infringement of the Registered Works, RMG is entitled to recover up to $150,000 in statutory damages for each of the infringed Registered Works.

102. Alternatively, at RMG's election, pursuant to 17 U.S.C. § 504(b), RMG is entitled to its damages, including Donovan Marine's profits from contributory infringement, in connection with the Registered Works as will be proven at trial.

103. RMG is also entitled to recover attorneys' fees and costs pursuant to 17 U.S.C. § 505 and prejudgment interest according to law.

### FIFTH CLAIM FOR RELIEF
### VICARIOUS LIABILITY FOR COPYRIGHT INFRINGEMENT BY DONOVAN MARINE

104. RMG incorporates by reference each and every allegation contained in Paragraphs 1–62 above.

105. Donovan Marine is vicariously liable for BIG's direct infringement of the Registered Works.

106. Donovan Marine has the legal right and the actual ability to supervise or control the infringing activities of BIG.

107. Donovan Marine has failed to take any action to stop such infringement of the Registered Works.

108. Donovan Marine has a financial interest in, and derives direct financial benefit from, BIG's continued infringing use of the Registered Works.

109. By failing to stop the infringement of BIG, Donovan Marine is profiting from illicit revenue that it would not have otherwise received.

110. These specific acts of vicarious copyright infringement alleged in this Complaint, as well as Donovan Marine's entire course of conduct, have caused and are causing RMG significant damage.

111. The acts of vicarious copyright infringement by Donovan Marine have been willful, intentional, and purposeful in disregard of and indifference to RMG's rights.

112. Pursuant to 17 U.S.C. § 504(c), as a direct and proximate result of Donovan Marine's vicarious copyright infringement of the Registered Works, RMG is entitled to recover up to $150,000 in statutory damages for each of the infringed Registered Works.

113. Alternatively, at RMG's election, pursuant to 17 U.S.C. § 504(b), RMG is entitled to its damages, including Donovan Marine's profits from vicarious copyright infringement, in connection with the Registered Works as will be proven at trial.

114. RMG is also entitled to recover attorneys' fees and costs pursuant to 17 U.S.C. § 505 and prejudgment interest according to law.

## JURY DEMAND

115. RMG demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, RMG prays the Court to:

a) issue injunctive relief against Defendants, and that Defendants, their directors, principals, officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with

    Defendants, be enjoined and restrained from copying, using, modifying, distributing, publicly displaying, or making any other infringing use of the Registered Works;

b) order the impoundment or other reasonable disposition of all infringing material;

c) order Defendants to pay RMG statutory damages as set forth in 17 U.S.C. § 504(c) or, in the alternative, RMG's actual and consequential damages incurred;

d) order Defendants to account for and disgorge to RMG all profits derived by Defendants from their unlawful acts;

e) declare that Defendants' infringement is willful;

f) order Defendants to pay exemplary and punitive damages as the Court finds appropriate to deter any future willful infringement;

g) order Defendants to pay RMG's litigation expenses, including reasonable attorneys' fees and costs of this action; and

h) grant RMG any such further relief as the Court may deem just and proper.

DATED April 19, 20223.

 

/s/ *Julianne P. Blanch*

Julianne P. Blanch, USB # 6495
Gregory H. Gunn, USB # 15610
**PARSONS BEHLE & LATIMER**
201 S. Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
JBlanch@parsonsbehle.com
GGunn@parsonsbehle.com
ecf@parsonsbehle.com

OF COUNSEL:
Michael V. Solomita (*pro hac vice* to be requested)
**NORTON ROSE FULBRIGHT US LLP**
1301 Avenue of the Americas
New York, NY 10019-6022
Telephone: 212.318.3000
michael.solomita@nortonrosefulbright.com

*Attorneys for Plaintiff RMG Media, LLC*