IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RMG MEDIA, LLC,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>DONOVAN MARINE, INC. and BOATING INVESTMENT GROUP, LLC,<br><br>　　　　　　Defendants. | **ORDER AND MEMORANDUM DECISION DENYING MOTION TO DISMISS**<br><br>Case No. 2:23-cv-251-TC-CMR<br><br>Judge Tena Campbell<br>Magistrate Judge Cecilia M. Romero |

　　　　Before the court is a motion to dismiss filed by Defendants Donovan Marine, Inc. (Donovan Marine) and Boating Investment Group, LLC (BIG). (ECF No. 34.)

　　　　This action arises out of a contractual dispute between Plaintiff RMG Media, LLC (RMG) and iBoats, Inc. (iBoats). RMG asserts that iBoats never paid RMG in full for certain computer program modules that RMG developed for use in a website that was owned and operated by iBoats. But the action is more complicated than a simple contract case for two reasons.

　　　　First, iBoats—which has now dissolved—is not a named defendant in this action. RMG alleges that iBoats transferred its assets, including ownership of the website, to Hopton Brow Utah, LLC (Hopton Brow). Hopton Brow later sold its intellectual property rights to BIG and then filed for bankruptcy. These events led RMG to file two separate cases that are now pending in this court. The first, RMG Media v. iBoats, No. 2:22-cv-3 (RMG I), was originally filed in the United States District Court for the District of Delaware and later transferred here. In RMG I,

1

RMG asserts causes of action against iBoats and Hopton Brow.  But due to Hopton Brow's bankruptcy—a notice of which was filed only weeks before a hearing on the defendants' motion for summary judgment—that case was automatically stayed.  RMG then filed the above-captioned matter, <u>RMG Media v. Donovan Marine, Inc.</u>, No. 2:23-cv-251 (<u>RMG II</u>), asserting causes of action against Donovan Marine and BIG.  <u>RMG II</u> was originally assigned to the Honorable David B. Barlow, but later transferred to the undersigned judge in the interests of judicial efficiency.  Donovan Marine and BIG have moved to dismiss <u>RMG II</u> on the ground that RMG has engaged in claim-splitting and that therefore this later-filed action is precluded by <u>RMG I</u>.

      The second complication is that RMG does not assert claims for breach of contract or unjust enrichment against the Defendants.  Instead, RMG asserts claims for copyright infringement, arguing that the Defendants do not have a license to use RMG's copyrighted material in the current iteration of the iBoats website.  Donovan Marine and BIG also move to dismiss <u>RMG II</u> on the ground that any claims against them sound in contract, not copyright law.  The court must determine whether the relevant payment provision in the contract is a covenant of the contract (creating only a duty to pay) or a condition precedent to the transfer of a full license to use RMG's intellectual property.

      For the reasons stated below, the court denies the Defendants' motion to dismiss and finds that RMG may pursue its copyright infringement claims.  The court also finds that <u>RMG I</u> and <u>RMG II</u> are duplicative, and that one case should be dismissed.  But given the bankruptcy stay, the court orders the parties to meet and confer to decide which dismissal would achieve the most efficient resolution of both matters.

## BACKGROUND

According to RMG's Complaint (ECF No. 2), the website www.iboats.com is used to buy and sell boat parts and accessories to individuals within the State of Utah. (Compl. ¶¶ 7, 9.) Around April 16, 2018, iBoats hired RMG to design certain modules for that website. (Id. ¶ 13.) Their relationship was governed by a Master Services Agreement (MSA), which envisioned that RMG would complete certain "Project Assignments" for iBoats. (Id. ¶¶ 13, 15.) Under these specific Project Assignments, RMG wrote new computer program modules and modified existing modules;[1] the source code for those modules was then incorporated into the iBoats website. The MSA also provided as follows:

> Subject to and conditioned upon Customer's [i.e., iBoats] payment of full compensation to Consultant [i.e., RMG] in accordance with any Project Assignment, Consultant hereby irrevocably assigns and agrees to assign to Customer all right, title and interest worldwide in and to the Work Project (whether currently existing or conceived, created or otherwise developed later), including, without limitation, all copyrights, trademarks, trade secrets, patents, industrial rights and all other intellectual and proprietary rights related thereto[.]

(MSA § 6.2, ECF No. 34-1 at 11–12.)[2]

RMG alleges that, around July 1, 2019, iBoats defaulted on its payments owed under the MSA. (Compl. ¶ 21.) In pleadings filed in RMG I, iBoats admitted that there were outstanding unpaid invoices for $157,023.47 but asserted that it stopped paying the invoices because the website did not work as promised and noted that it had previously paid RMG $1,064,069.49 for RMG's work. (See ECF No. 34 at 16 n.36.) Several months later, on January 30, 2020, RMG registered copyrights in the source code of the relevant modules with the United States Copyright

---

[1] RMG attached a list of 57 modules covered by the relevant Project Assignments to the Complaint. (See Ex. A to Compl., ECF No. 2-2.) The names of these modules include: BoatCoverFinder, Checkout, CheckoutSuccess, EnginePartsFinder, and Shipping. (Id.)

[2] Citations are to PDF pages, not internal document pages.

Office.  (Compl. ¶ 19.)  On February 5, 2020, RMG Media provided notice to iBoats that it was terminating the MSA due to the payment default.  (Compl. ¶ 26.)

But without RMG's knowledge, iBoats had already agreed to an asset purchase with Hopton Brow on December 31, 2019, under which Hopton Brow acquired ownership of the website.[3]  (Id. ¶ 24.)  As a result, RMG did not include Hopton Brow as a defendant when it filed RMG I on February 27, 2020, in the District of Delaware.  (See Compl., ECF No. 1 in RMG I.)  Instead, RMG sued iBoats and its parent company, Seacoast Capital Managers, LLC (Seacoast) for direct, contributory, and vicarious copyright infringement.  (Id. ¶¶ 2–3, 19–44.)  After learning that Hopton Brow had acquired ownership of the website, RMG dismissed Seacoast from the lawsuit and filed a Second Amended Complaint (SAC) adding Hopton Brow as a defendant.  (See SAC, ECF No. 97 in RMG I.)  RMG alleges that "iBoats did not have a license to use RMG's Registered Works, nor did it have RMG's permission or consent to authorize others, including Hopton Brow, to use RMG's Registered Works" beyond February 5, 2020.  (Id. ¶ 29.)  RMG I was transferred to the District of Utah on January 3, 2022.  (See ECF No. 128 in RMG I.)

Around April 2022, Hopton Brow entered into negotiations with Donovan Marine, who facilitated the creation of BIG to provide Hopton Brow with a secured line of credit for $1 million.  (Compl. ¶¶ 33–34, 37.)  RMG alleges that Donovan Marine controlled, operated, and financed BIG and that, under the terms of the promissory notes, employees and officers of Donovan Marine controlled the day-to-day management decisions at Hopton Brow.  (Id. ¶¶ 36, 42–44.)  On July 26, 2022, Hopton Brow and BIG executed an amended promissory note increasing the secured line of credit to $2 million.  (Id. ¶ 40.)

---

[3] RMG alleges that iBoats is "now dissolved."  (Compl. ¶ 14.)

On September 26, 2022, BIG demanded full payment from Hopton Brow, foreclosing on its loan, for the outstanding balance of $1,003,600 due under the secured line of credit. (Id. ¶ 50.) On October 27, 2022, BIG served Hopton Brow with a petition for executory process in a civil district court in Louisiana, along with a notice of seizure of Hopton Brow's intellectual property rights, rights that included the website and associated code. (Id. ¶ 51.) At a sheriff's auction on December 7, 2022, BIG purchased Hopton Brow's intellectual property rights for $470.13. (Id. ¶ 52.) RMS pleads on information and belief that BIG's only current business operation is to develop and operate the website. (Id. ¶ 58.)

Hopton Brow filed for Chapter 7 bankruptcy on February 1, 2023. (See Not. Bankr., ECF No. 193 in RMG I.) The notice of bankruptcy automatically stayed RMG I under 11 U.S.C. § 362. At that point in the litigation, the parties had fully briefed a motion for summary judgment filed by the RMG I Defendants, and the court had set a hearing. (See Not. Hr'g for Mar. 8, 2023, ECF No. 178 in RMG I.)

RMG filed suit in RMG II against Donovan Marine and BIG on April 19, 2023. (See Compl.) That case was assigned to the Honorable David B. Barlow. Under this court's local rule DUCiv 83-2(g), and after conferring with Judge Barlow about the appropriateness of a transfer, the court sua sponte ordered that RMG II be transferred to the undersigned judge. (Order Reassigning Related Case dated May 21, 2024, ECF No. 36.) The court then held a hearing on the Defendants' pending motion to dismiss. (See Min. Entry dated June 25, 2024, ECF No. 38.) At that hearing, RMG noted that it had filed a claim against Hopton Brow in the bankruptcy proceedings but advised the court that those proceedings were winding up.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) requires dismissal if the complaint or other pleading fails to state a claim upon which relief can be granted. The court must accept all well-pled factual allegations as true and construe them in the light most favorable to the nonmoving party. Strauss v. Angie's List, Inc., 951 F.3d 1263, 1267 (10th Cir. 2020). But that rule does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a [party] must offer specific factual allegations to support each claim." Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[T]o withstand a motion to dismiss, a [pleading] must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

**ANALYSIS**

The court must address three issues raised by the Defendants' motion to dismiss. First, the Defendants argue that RMG has no cause of action for copyright infringement under the MSA and is instead limited to a cause of action for breach of contract. Essentially, the Defendants argue that the court should interpret the Defendants' duty to pay as a covenant of the contract, not as a condition precedent to the transfer of RMG's intellectual property rights. Second, the Defendants argue that, even if the court allows the copyright claim to proceed, RMG is nevertheless barred from any statutory damages because infringement began before RMG registered the works. Finally, the Defendants argue that RMG has improperly split its claims by filing a second action.

I.  **Copyright vs. Breach of Contract**

A central question in both RMG I and RMG II—and a question which has eluded a decision on the merits from this court due to Hopton Brow's bankruptcy—is whether the MSA allows RMG to bring a claim for copyright infringement rather than a breach of contract claim. The relevant provision states:

> Subject to and conditioned upon Customer's [i.e., iBoats] payment of full compensation to Consultant [i.e., RMG] in accordance with any Project Assignment, Consultant hereby irrevocably assigns and agrees to assign to Customer all right, title and interest worldwide in and to the Work Project (whether currently existing or conceived, created or otherwise developed later), including, without limitation, all copyrights, trademarks, trade secrets, patents, industrial rights and all other intellectual and proprietary rights related thereto[.]

(MSA § 6.2, ECF No. 34-1.)

RMG argues that the words "[s]ubject to and conditioned upon" create a condition precedent rather than a covenant. (Pl.'s Mem. Opp'n, ECF No. 35 at 11–12.)  Under this theory, RMG granted a temporary license for its intellectual property to iBoats, and later retracted that license when iBoats failed to meet the condition precedent (i.e., full payment) required for a full and irrevocable assignment of rights.  The Defendants disagree, asserting that the payment obligation owed by iBoats was simply a standard covenant of the contract and that RMG—while it may sue for breach of contract—has no claim for copyright infringement.  (ECF No. 34 at 15–18.)

The relevant law on this question is summarized by the Second Circuit in Graham v. Jones:

> Generally, if the licensee's improper conduct constitutes a breach of a covenant undertaken by the licensee and if such covenant constitutes an enforceable contractual obligation, then the licensor will have a cause of action for breach of contract, not copyright infringement.  However, if the nature of a licensee's violation consists of a failure to satisfy a condition to the license, it follows that the rights dependent upon satisfaction of such condition have not been effectively

> licensed, and therefore any use by the licensee is without authority from the licensor and may therefore constitute an infringement of copyright.

144 F.3d 229, 236–37 (2d Cir. 1998) (cleaned up).  Under New York law—and the MSA specifies that the court should apply New York law (MSA § 11.1)—, the presumption is that the terms of a contract are covenants rather than conditions.  See Grant Union Co. v. Cord Meyer Dev. Co., 761 F.2d 141, 147 (2d Cir. 1985) ("In the absence of more compelling evidence that the parties intended to create a condition, the negotiation provision must be construed as a promise or covenant.").

But that presumption can be overcome.  And there are two ways in which the agreement in Graham is distinguishable from the MSA signed by RMG and iBoats.  First, it is notable that the licensing provisions at issue in Graham concerned royalty payments, which are continuing payments to the creator of the intellectual property based on number of sales.  Here, RMG does maintain not an ongoing relationship with iBoats.  Rather, RMG indicates a specific point in time—when iBoats did not pay certain invoices—that iBoats failed to comply with what RMG terms a condition precedent.

More importantly, the agreement in Graham was not written down: "Graham and James orally agreed to the licensing agreement and did not clearly delineate its conditions and covenants."  Graham, 144 F.3d at 237.  Here, the MSA clearly laid out the conditions under which RMG would irrevocably assign the rights to its intellectual property to iBoats: "Subject to and conditioned upon Customer's payment of full compensation to Consultant in accordance with any Project Assignment, Consultant hereby irrevocably assigns …."  (MSA § 6.2.)  The plain text of this provision reads as a condition precedent to an irrevocable assignment of rights.  In arguing that full payment was a contractual covenant and not a condition precedent, the Defendants point to a separate provision of the MSA stating that, in the event of termination,

8

"Consultant shall be obligated to transfer to Customer that portion of the deliverables paid for through the date of termination." (Id. § 8.4.) But this provision does not help the Defendants. For one, iBoats did not pay for the deliverables included in the Project Assignments at issue. And, in any event, the same provision of the MSA cited by the Defendants also states that "the rights of [the relevant deliverables] will be transferred to Customer as provided in Section 6.5(b)." (Id.) Section 6.5(b), in turn, includes the same condition precedent to an irrevocable transfer: "Subject to and conditioned upon Customer's payment of full compensation .…" (Id. § 6.5(b).)

More recent cases applying Graham support RMG's right to maintain its copyright claims. In Tangorre v. Mako's, Inc., for instance, the Southern District of New York granted partial summary judgment to a plaintiff on its copyright infringement claims after noting that, unlike the contract in Graham, "there was a written agreement containing a term that unambiguously conditioned the grant of rights to use Tangorre's photographs upon payment in full of the contract price. For this reason, the argument by Mako's that the clause at issue was a contract covenant fails, as a matter of law." No. 01Civ430, 2003 WL 470577, at *8 (S.D.N.Y. Jan. 6, 2003).

Although it may at first appear strange to permit a claim for copyright infringement in a dispute that otherwise resembles a breach of contract case, the plain language of the contract here suggests that the parties bargained for and agreed upon this result. In any event, RMG's decision to sue the Defendants for infringement does not necessarily entail a larger damages award. The court has wide discretion in fashioning an award of statutory damages for copyright infringement:

> When determining the amount of statutory damages to award for copyright infringement, courts consider: (1) the infringer's state of mind; (2) the expenses

9

> saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir. 2010). Here, the revenue lost by the copyright holder is readily ascertainable, as it equals the value of the unpaid invoices. It will therefore be RMG's burden moving forward to demonstrate to the court why some other measure of damages separate from or in addition to the value of the unpaid invoices is appropriate.

## II.  Statutory Damages

The Defendants assert that, even if the court allows the copyright claims to proceed, RMG is nevertheless barred from seeking statutory damages because the relevant registered works are unpublished and the alleged infringement commenced prior to registration. (ECF No. 32 at 19–20.) Under 17 U.S.C. § 412, "no award of statutory damages … shall be made for … any infringement of copyright in an unpublished work commenced before the effective date of its registration[.]"

The court is not persuaded. Although RMG did not register its copyrights until January 30, 2020, the court disagrees that the alleged infringement began in or around July 2019 when iBoats first missed a payment. The MSA granted RMG an "irrevocable … license" upon "payment of full compensation" but did not state that RMG was barred from making use of the website modules while payment was pending. (MSA § 6.2.) Under the court's reading of the agreement, RMG provided the website modules to iBoats under a temporary license—a license that was valid even if iBoats was behind in its payment—that would become final and irrevocable upon full payment. Accordingly, any copyright infringement did not begin until February 5, 2020, the date on which RMG terminated the agreement.

In any event, iBoats is not a defendant in the current action, and RMG's contention in RMG II is that Donovan Marine and BIG committed copyright infringement because they knew or should have known that there was an intellectual property dispute over the use of the iBoats website at the time they began exercising control over that website. (See Compl. ¶¶ 48, 62.) According to RMG, this control—and therefore any copyright infringement by the Defendants in RMG II—did not occur until April 2022 at the earliest (see Compl. ¶ 33), well after RMG registered the works in January 2020.

Notably, this issue was also raised in a motion to dismiss filed by iBoats in RMG I when that case was pending in the District of Delaware. (See Def.'s Opening Br. Supp. Mot. Dismiss, ECF No. 105 (arguing that RMG was barred from pursuing statutory damages because any infringement commenced before the works had been registered).) The Honorable Richard G. Andrews denied the motion but did not issue a written ruling. (See Oral Order dated Dec. 14, 2021, ECF No. 127.)

### III. Claim-Splitting

The Defendants' final argument is that RMG has improperly split its claims by filing a new action. Claim splitting occurs when two lawsuits are filed involving the same parties and a common set of facts. See Katz v. Gerardi, 655 F.3d 1212, 1217 (10th Cir. 2011). Although the rule is related to the doctrine of res judicata, courts have primarily developed the rule to control their dockets more efficiently. See id. at 1217–18. "District courts have discretion to control their dockets by dismissing duplicative cases." Id. at 1217.

The test for whether a party has improperly engaged in claim splitting is "whether the first suit, assuming it were final, would preclude the second suit." Id. at 1218. And in federal question cases, three elements must exist for claim preclusion to apply: "(1) a [final] judgment

on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits."[4] Johnson v. Spencer, 950 F.3d 680, 693 (10th Cir. 2020) (quoting Lenox MacLaren Surgical Corp. v. Medtronic, Inc., 847 F.3d 1221, 1239 (10th Cir. 2017)).  Assuming the first prong has been met, the court considers whether the second and third elements are satisfied here.

### A. Identity of Parties

The Defendants argue that the parties are identical in this case because they are in privity with the defendants in RMG I.  In contrast, RMG argues that the relationship between the two sets of defendants is merely that between creditor and debtor.

"Generally, claim preclusion requires that the named parties in the first and second suits be identical…. But an exception to this rule applies where there is 'privity' between the defendant(s) bound by the first suit and the new defendant(s) named in the second suit." Lenox MacLaren Surgical Corp., 847 F.3d at 1240 (citations omitted).  "Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." Pelt v. Utah, 539 F.3d 1271, 1281 (10th Cir. 2008) (quoting Lowell Staats Min. Co. v. Phila. Elec. Co., 878 F.2d 1271, 1275 (10th Cir. 1989)); see also Lenox MacLaren Surgical Corp., 847 F.3d at 1240–41 (summarizing the corporate contexts in which the Tenth Circuit has found privity).

The Tenth Circuit has found privity between corporations and their agents.  See, e.g., Fox v. Maulding, 112 F.3d 453, 459–60 (10th Cir. 1997) (finding officers and directors of a bank in

---

[4] The Tenth Circuit noted: "[E]ven if these three elements are satisfied, there is an exception to the application of claim preclusion where the party resisting it did not have a 'full and fair opportunity to litigate' the claim in the prior action." Johnson, 950 F.3d at 693 (quoting Lenox MacLaren Surgical Corp., 847 F.3d at 1239).  The court need not consider this fourth factor to determine whether any claim splitting issues arise here.

12

privity with the bank); Lowell Staats Mining Co., 878 F.2d at 1276 (upholding a finding of privity between a corporation and its agent because "[a] corporation acts through its officers, directors and agents."). The Tenth Circuit has also found privity between related corporate entities. See, e.g., Robinson v. Volkswagenwerk AG, 56 F.3d 1268, 1275 (10th Cir. 1995) (finding parent company in privity with its subsidiary); Circle v. Jim Walter Homes, Inc., 654 F.2d 688, 692 (10th Cir. 1981) (finding subsidiary assignee in privity with parent); Lenox MacLaren Surgical Corp., 847 F.3d at 1241–42 (finding privity between members of an enterprise). And, crucially, "successors and assigns to a property interest are often considered sufficiently 'in privity' for preclusion purposes" because the "predecessor has the same economic interests to worry about and defend as the successor." Entek GRB, LLC v. Stull Ranches, LLC, 763 F.3d 1252, 1259 (10th Cir. 2014) (finding no privity between a predecessor and successor "when the parties to a litigation ending agreement could not have reasonably thought the deal would inure to the benefit of other parties and so protect their future claims").

  Here, RMG is a party to both suits. The court therefore focuses on whether the two sets of defendants "are really and substantially in interest the same." Pelt, 539 F.3d at 1281. RMG alleges that, in April 2022, Donovan Marine became a secured creditor of Hopton Brow. (Compl. ¶¶ 33–39.) RMG further alleges that the debtor-creditor relationship included a provision that allowed BIG to select a consultant who would advise Hopton Brow on day-to-day management decisions (id. ¶ 42) and that employees and officers of Donovan Marine acted as consultants in this capacity (id. ¶ 43). RMG maintains that Donovan Marine and BIG "induced, caused, facilitated, encouraged, or materially contributed to Hopton Brow's" alleged copyright infringement "through their involvement in the day-to-day management of Hopton Brow[.]" (Id. ¶ 46.) Finally, RMG alleges that BIG acquired Hopton Brow's intellectual property rights,

13

including the website, and that Donovan Marine now controls the website through BIG. (Id. ¶¶ 52, 57–61.) As alleged, the relationship between the Defendants in this action and Hopton Brow is one of sufficient privity to justify preclusion.

### B. Identity of Claims

The Defendants argue that RMG has brought nearly identical claims in both RMG I and RMG II. But RMG asserts that it has brought new and independent claims in RMG II because the facts at issue in this case only arose after the previous case was filed.

The Tenth Circuit has "adopted the transactional approach … to determine what constitutes a 'cause of action' for res judicata purposes." King v. Union Oil Co. of Cal., 117 F.3d 443, 445 (10th Cir. 1997). Under this approach, the court examines whether the causes of action in two suits involve the same transaction or "series of connected transactions." Id. (quoting Lowell Staats Mining Co., 878 F.2d at 1274). "What constitutes a 'transaction' or a 'series' is to be determined pragmatically considering whether the facts are related in time, space, origin, or motivation, and whether they form a convenient trial unit." Id. But "broadly speaking, claim preclusion does not bar subsequent litigation of new claims based on facts the plaintiff did not and could not know when it filed its complaint." Lenox MacLaren Surgical Corp., 847 F.3d at 1244. Ideally, though, "if the plaintiff discovers facts during the litigation that stem from the same underlying transaction, it must supplement its complaint with any new theories these facts support." Id. A plaintiff may pursue a subsequent lawsuit "only if the facts discovered mid-litigation give rise to 'new and independent claims, not part of the previous transaction.'" Id. at 1244–45 (quoting Hatch v. Boulder Town Council, 471 F.3d 1142, 1150 (10th Cir. 2006)).

The court finds that both RMG I and RMG II arise from the same transaction or series of transactions. Both cases involve alleged copyright infringement related to the use and operation

14

of a website that contains modules developed by RMG.  The cases have a common origin and form a convenient trial unit.  Although there are some differences about what RMG must prove for each of its various infringement claims (direct, contributory, and vicarious) against each defendant, the central issues in both suits are whether the website continues to use RMG's registered works and whether that use constitutes copyright infringement.

The timing of the actions does not alter the court's analysis.  RMG argues that its claims against the Defendants in RMG II did not arise until two years after it filed its complaint in RMG I.  But while it is true that courts will not always find claim preclusion when the facts at issue arise after the filing of the initial complaint, the Tenth Circuit has stressed that parties must generally seek leave to amend their pleading in these circumstances.  See Lenox MacLaren Sugical Corp., 847 F.3d at 1244.  Here, there is no reason why RMG could not seek leave to amend its complaint in RMG I to add its claims against Donovan Marine and BIG.

### C.  Remedy

For the foregoing reasons, the court finds that the second and third prongs of the claim preclusion analysis are met.  But there has been no final judgment in RMG I.  And because RMG II therefore presents a claim splitting issue, rather than a question of full claim preclusion, the court has some discretion about how to fashion a remedy.  While the court finds that RMG I and RMG II are duplicative, the court is agnostic about which case should be dismissed.

The court therefore orders the parties to meet and confer about how they wish to proceed.  Should the parties determine that litigation should continue in this action (RMG II), the parties should file a stipulation of dismissal in RMG I.

Should the parties instead wish to proceed in RMG I with an amended complaint, the parties must update the court about the status of Hopton Brow's bankruptcy and provide

argument about whether the automatic stay should be lifted against Hopton Brow or, if not, whether it should be applied against the other defendants. In general, the automatic bankruptcy stay only operates against the debtor. See Okla. Federated Gold & Numismatics, Inc. v. Blodgett, 24 F.3d 136, 141 (10th Cir. 1994). But there is a "narrow exception" to this rule that allows a stay to be imposed against a nonbankrupt party "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." Id. (quoting A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986)). Although this rule may operate to stay proceedings against Donovan Marine and BIG once they are part of RMG I, the court finds no bar to granting leave to RMG to amend its complaint in RMG I to add these defendants.

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1. The Defendants' Motion to Dismiss (ECF No. 34) is DENIED.

2. The parties must meet and confer to determine how they wish to proceed. Within 14 days from the date of this order, the parties must file either: 1) a stipulation of dismissal in RMG I (No. 2:22-cv-3); or 2) a stipulation of dismissal in RMG II (No. 2:23-cv-251) and any accompanying motion for leave to amend in RMG I. To the extent that Hopton Brow remains a defendant in this proceeding, the parties must also file within 14 days from the date of this order a report updating the court about the status of Hopton Brow's bankruptcy and any argument (which may be filed in separate briefs) about whether the automatic bankruptcy stay should also stay proceedings against Donovan Marine and BIG until Hopton Brow's bankruptcy action has

concluded.

DATED this 17th day of September, 2024.

BY THE COURT:

_Tena Campbell_
Tena Campbell
United States District Judge